UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN WEBSTER,**<br><br>          **Plaintiff,**<br><br>               **v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>          **Defendant.** | **Civil Action No. 20-300 (JDB)** |

## MEMORANDUM OPINION

Plaintiff Brian Webster brings this action against defendant District of Columbia, alleging that the District violated his constitutional and statutory rights by failing to prevent a jailhouse attack on Webster during his pretrial detention in October 2016. The District now moves for dismissal of various specific claims within Webster's amended complaint. The Court agrees with the District's arguments and, therefore, will grant the motion for partial dismissal.

### Background

In October 2016, Webster was detained at the District of Columbia Central Detention Facility ("D.C. Jail") pending trial in a matter unrelated to this one. Am. Compl. [ECF No. 12] ¶¶ 1, 7. In late November 2018, Markle Moore, a fellow detainee, who "was previously involved in other assaults on other inmates at the D.C. Jail," id. ¶ 16, attacked Webster, "stabb[ing] on his neck several times," id. ¶ 8.

Following the attack, a Sergeant in the D.C. Department of Corrections determined that, because Moore "was on general lockdown," he and Webster should never have been out of their cells simultaneously. Id. ¶ 9. According to Webster, the Sergeant stated that "additional measures" would need to be taken "to ensure that . . . Moore would not be permitted into the

1

general population at the same time as . . . Webster." Id.  Nonetheless, these measures apparently failed because on December 14, 2018, Moore once again encountered Webster and attacked him, stabbing him "on or about his left mid-arm, left upper shoulder, and left side." Id. ¶ 10.  Moore also pushed Webster down the stairs of the jail's housing unit, breaking Webster's arm in three places.  Id.  These injuries required Webster to receive stitches and to undergo "extensive surgery to repair his arm." Id.  D.C. Jail investigated the incident, and Moore was ultimately charged with "assault with a dangerous weapon." Id. ¶ 14.

Less than a week after the incident, Webster submitted a formal grievance with the Department of Corrections "regarding [the Department's] violation of its duty to protect [Webster] and violations of [his] constitutional rights." Id. ¶ 13.  The Department never responded to this grievance, nor to two subsequent grievances that Webster filed in the weeks following the second attack.  Id.

On December 19, 2019. Webster sued the District of Columbia in D.C. Superior Court, see Compl. [ECF No. 1-1] at 1, alleging two claims of negligent and/or reckless "breach of [its] duty" under D.C. law to protect its pretrial detainees, one claim of deliberate indifference "in violation of the laws of the Constitution and procedures governing the operation of the D.C. Department of Corrections," and one claim of "emotional distress" (seemingly under D.C. law), Am. Compl. ¶¶ 18–53.  The District removed the case to this Court, see Notice of Removal of Civil Action [ECF No. 1] at 1–3, then moved for partial dismissal of Webster's claim, see Def. District of Columbia's Mot. for Partial Dismissal [ECF No. 3] at 1.  On February 27, 2020, Webster filed an amended complaint, see Am. Compl. at 1–2, thereby mooting the District's initial motion for partial dismissal, see Olaniyi v. District of Columbia, Civil Action No. 05-455 (RBW), 2006 WL 8447858, at *2 (D.D.C. Nov. 10, 2006) ("den[ying] without prejudice as moot" a motion to dismiss

an original complaint once it was superseded by an amended complaint).  The District has now filed a second motion for partial dismissal, see Def. District of Columbia's Mot. for Partial Dismissal of Am. Compl. ("Def.'s Mot.") [ECF No. 15-1] at 1, which is ripe for consideration.

## Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "construe[s] the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  And although the court presumes the truth of a complaint's factual allegations, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation omitted).  The key question is whether the complaint "state[s] a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted).  When "a complaint pleads facts that are merely consistent with a defendant's liability," that complaint "stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks omitted).

## Analysis

The District raises five points in its motion for partial dismissal: (1) Webster fails to state a claim against the District under the Fourteenth Amendment, Def.'s Mot. at 4–5; (2) Webster fails to state a claim for a constitutional violation under D.C. Code § 24-211.02, id. at 5–6; (3) Webster fails to support his claim under 42 U.S.C. § 1983 with any factual allegations that a municipal custom or policy caused the alleged violations of his rights, id. at 6–9; (4) Webster fails to state a claim for intentional infliction of emotional distress, id. at 9–10; and (5) Webster fails to cite any statutory authority for his claim to punitive damages, id. at 10–11.

To begin, the District's first argument does not appear to address any specific count in Webster's complaint, but instead targets the lone reference to the Fourteenth Amendment on the first page of Webster's amended complaint. See Am. Compl. at 1 (seeking "monetary damages in recompense for [Webster's] injuries resulting from Defendant's violations of Plaintiff's Fifth and Fourteenth Amendment Rights"). As far as it goes, the District's argument is correct—the Fourteenth Amendment's Due Process Clause does not apply to the District of Columbia, see Sheikh v. District of Columbia, 77 F. Supp. 3d 73, 80 (D.D.C. 2015) (citing Bolling v. Sharpe, 347 U.S. 497, 498–99 (1954)). And although the Fourteenth Amendment's Equal Protection Clause does apply in the District of Columbia through the Fifth Amendment's Due Process Clause, see id. at 80 n.6 (citing Dixon v. District of Columbia, 666 F.3d 1337, 1339 (D.C. Cir. 2011)), Webster alleges no facts suggesting discrimination against him. Nevertheless, because Webster cites the Fifth Amendment alongside the Fourteenth Amendment, this argument alone does not eliminate any of Webster's claims.

Likewise, the District's second argument that Webster fails to state a "constitutional violation" under D.C. Code § 24-211.02 in Counts One and Two is also true as far as it goes, but does not provide adequate grounds for dismissing any of Webster's claims. Although Webster's amended complaint does allude to "violation[s] of the laws of the Constitution" under Counts One and Two, see Am. Compl. ¶¶ 26, 36, in substance, each claim is for negligence under D.C. Code § 24-211.02, not for violations of the Constitution, see id. ¶¶ 18–37. Webster admits as much, clarifying that he "is not attempting to establish constitutional violations in Counts One and Two of his Amended Complaint." Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial Dismissal of the Am. Compl. ("Pl.'s Opp'n") [ECF No. 18] at 2–3. The Court thus agrees with the District that Webster

4

has failed to state a claim for a constitutional violation under D.C. Code § 24-211.02 but concludes that these claims are nevertheless still viable and will not be dismissed.

The District next argues that the amended complaint fails to state a claim of deliberate indifference to support Webster's § 1983 claim. Def.'s Mot. at 6–9. Specifically, the District suggests that Webster has "fail[ed] to meet his burden . . . [to] allege that a custom or policy of [the District] caused the [alleged] violation." Id. at 7 (internal quotation marks omitted). The District also argues that, at least in terms of Counts One and Two, Webster's claims are for negligence, which does not rise to the level of "deliberate indifference," see Farmer v. Brennan, 511 U.S. 825, 835 (1994), and "does not support an action pursuant to 42 U.S.C. § 1983," Rivera v. McKenna, No. 3:02CV244(SRU), 2004 WL 231396, at *2 (D. Conn. Feb. 5, 2004). See Def.'s Mot. at 8.

The District is correct on both fronts. To start, Webster fails to allege any facts demonstrating that either attack by Moore was a product of official policy at the D.C. Jail. "A municipality may be held liable under section 1983 only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights." Morgan v. District of Columbia, 824 F.2d 1049, 1058 (D.C. Cir. 1987). A plaintiff can satisfy this standard by demonstrating "that the deliberate indifference is a persistent and widespread practice or course of action that characteristically was repeated under like circumstances," for instance, when "a known hazardous risk has been allowed to continue over time without doing anything significant to alleviate the risk." Id. Webster's amended complaint details no such failure "over time"—indeed, it provides no factual allegations to contextualize what policy, custom, or long-term procedural oversights gave rise to the second attack. See Am. Compl. ¶ 10. When the amended complaint does discuss the D.C. Jail's practices and policies, the allegations come in the form of a conclusory

5

list of failures without any specific factual support. See id. ¶¶ 11, 25, 35, 44; see also Trimble v. District of Columbia, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) ("[M]erely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983.").

Moreover, even if Webster had alleged a municipal policy, he would still have failed to allege facts sufficient to bring a "deliberate indifference" claim under the Fifth Amendment. See Hardy v. District of Columbia, 601 F. Supp. 2d 182, 187 (D.D.C. 2009). Jail officials violate a prisoner's right to protection from harm by his fellow inmates "when they exhibit a 'deliberate or callous indifference' to an inmate's safety." Tucker v. Evans, 276 F.3d 999, 1001 (8th Cir. 2002) (quoting Davidson v. Cannon, 474 U.S. 344, 347 (1986)). And while it is certainly possible that officials acted with deliberate indifference, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678; see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."); SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.").

Beyond the mere fact of the attack, Webster provides no further factual allegations to support the claim that the prison officials were indifferent or callous about a future attack. Cf. Am. Compl. ¶¶ 8–11. If anything, the statements by the Sergeant, advising other members of the jail staff that Moore and Webster were not to be let out of their cells simultaneously, see Am. Compl. ¶ 9, suggest that the second attack arose from an unfortunate failure to follow the Sergeant's advice, rather than malice or utter disregard for Webster's wellbeing. Cf. Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004) ("Deliberate indifference . . . is determined

by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act." (internal quotation marks omitted)).

The closest that Webster's amended complaint comes to alleging facts to support a claim of deliberate indifference is a repeated list of failures by the D.C. Jail, which includes the Jail's "[a]llowing prisoners to access items which can be easily converted to weapons," providing insufficient staff to ensure Webster's safety, and failing to abide by "established safety procedures" and provide adequate training.  Id. ¶¶ 11, 25, 35, 44.  But Webster never connects these general allegations to the specific circumstances of his attack such that the Court can conclude that these systemic failures were the proximate cause of the attack.  See Jordan v. District of Columbia, 949 F. Supp. 2d 83, 88 (D.D.C. 2013) (explaining that a municipality can be held liable for deliberate indifference only if, among other things, a "policy of deliberate indifference is a proximate cause of the constitutional injury"); see also Thorp v. District of Columbia, 142 F. Supp. 3d 132, 139 (D.D.C. 2015) ("The stand-alone allegation of a policy or custom, therefore, is a statement [that] is nothing more than a legal conclusion couched as a factual allegation, which the Court is not obligated to accept." (internal quotation marks omitted)).

For instance, Webster does not specify which "established safety procedures" were not followed, nor does he ever claim that insufficient staffing on the night of December 14, 2018, proximately caused the attack.  See id. ¶¶ 10, 11, 25, 35, 44.  Such general, untethered allegations are not enough to state a claim of deliberate indifference.  See, e.g., Smith v. District of Columbia, 306 F. Supp. 3d 223, 253 (D.D.C. 2018) ("[P]laintiff bears the burden of proving that the lack of training actually caused the violation in question."); Art & Drama Therapy Inst., Inc. v. District of Columbia, 110 F. Supp. 3d 162, 175 (D.D.C. 2015) ("Plaintiffs cannot rely on vague and unsupported allegations; there must be some factual basis for an inference of municipal liability.").

7

The Court thus concludes that Webster has failed adequately to plead a claim of deliberate indifference to support his § 1983 claim and, accordingly, dismisses Count Three of the amended complaint.[1]

Fourth, the District contends that Webster's amended complaint fails to state a claim for intentional infliction of emotional distress in Count Four, because he alleges neither that "the Jail engaged in extreme and outrageous conduct" nor that the Jail's conduct was "intentional or reckless." Def.'s Mot. at 9–10. In response, Webster appears to contend only that he has satisfactorily alleged a negligent infliction of emotional distress claim under D.C. law, rather than one for intentional infliction of emotional distress. See Pl.'s Opp'n at 5–6. Indeed, the lone authority he cites in his response concerns negligent, rather than intentional, infliction of emotional distress. See id. at 5 (quoting Jane W. v. President & Dirs. of Georgetown Coll., 863 A.2d 821, 826–27 (D.C. 2004) (laying out the requirements for a prima facie claim of negligent infliction of emotional distress under D.C. law)).[2] The District has specifically disavowed any attempt "to dismiss any claim for negligent infliction of emotional distress." Def. District of Columbia's Reply Mem. ("Def.'s Reply") [ECF No. 19] at 4–5. Thus, like the District's first and second

---

[1] Of course this conclusion does not preclude Webster from amending his complaint in light of discovery, for instance, if he discovered that a specific policy of the D.C. Jail or order by a policymaker created the conditions for the attacks on Webster. See Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz, 31 F. Supp. 3d 237, 274 (D.D.C. 2014) (noting that plaintiffs "could have easily sought leave to amend their [Third Amended] Complaint again to correct [its] allegations in light of discovery").

[2] Webster has good reason for not pushing for a claim of intentional infliction of emotional distress. While he does allege that the District acted recklessly in allowing Moore again to gain access to Webster and to attack him for a second time, see Am. Compl. ¶¶ 10, 40, the misconduct he highlights does not rise to the level of "extreme and outrageous conduct" necessary to make out an intentional infliction of emotional distress claim under D.C. law. Ortberg v. Goldman Sachs Grp., 64 A.3d 158, 163 (D.C. 2013) (internal quotation marks omitted). To meet that standard, a plaintiff must demonstrate "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Wood v. Neuman, 979 A.2d 64, 77 (D.C. 2009) (quotation omitted). Taking all of Webster's allegations as true, he does not allege that the jail officials intentionally allowed Moore and Webster to interact again after the first attack, and the types of errors that might have led to that encounter are more akin to "missteps and mistakes," see Paavola v. United States, Civil Action No. 19-1608 (JDB), 2020 WL 2064789, at *13–14 (D.D.C. Apr. 29, 2020), than behavior "beyond all possible bounds of decency," Wood, 979 A.2d at 77.

arguments, this one too appears designed to clarify the nature of Webster's claim, rather than to eliminate the claim outright.

Finally, the District seeks to dismiss Webster's claim to punitive damages, arguing that such damages are unavailable against municipalities absent an express statutory authorization or "extraordinary circumstances" under D.C. law. Def.'s Mot. at 10–11 (quoting Maldonado v. District of Columbia, 924 F. Supp. 2d 323, 333–34 (D.D.C. 2013) (quotation omitted)). According to the District, Webster has failed to satisfy either prerequisite, see id., and the Court agrees.

Webster identifies no D.C. statute expressly authorizing recovery of punitive damages against the District. See Am. Compl. at 11; Smith v. District of Columbia, 336 A.2d 831, 832 (D.C. 1975) ("The clear weight of authority in the states is that as a general rule there can be no recovery of punitive damages against a municipality absent a statute expressly authorizing it. There is no such statute in this jurisdiction."). He argues, instead, that his allegations of "failure to provide adequate staffing to protect the health and safety of inmates held by [the Department of Corrections]," even after previous incidents, "clearly allege[] circumstances where the [District] has continued a policy which results in constitutional violations." Pl.'s Opp'n at 6. But none of this conduct amounts to the "extraordinary circumstances" necessary to allow for punitive damages against the District under D.C. law. See Daskalea v. District of Columbia, 227 F.3d 433, 447 (D.C. Cir. 2000) (concluding that "the D.C. Court of Appeals has given no hint that it would permit an award of punitive damages in" a deliberate indifference case). Webster's claim for punitive damages will thus be dismissed.

## Conclusion

For the foregoing reasons, the District's motion for partial dismissal of Webster's amended complaint will be granted. Accordingly, Count Three and any claim to punitive damages under

9

the amended complaint are dismissed.³  A separate order will be issued on this date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: <u>August 13, 2020</u>

---

³ The Court notes that Webster's § 1983 claim provided the basis for the District's removal of this case from D.C. Superior Court.  <u>See</u> Notice of Removal of a Civil Action at 1–3.  Absent that claim, remand may be appropriate.  <u>See</u> <u>Runnymede-Piper v. District of Columbia</u>, 952 F. Supp. 2d 52, 59 (D.D.C. 2013).  Accordingly, the Court will order that the parties provide supplemental briefing on this issue.